## Commonwealth v. Fish

*H. R. Berninger*, District Attorney, for Commonwealth.

*Franklin E. Kepner*, for defendant.

KREISHER, P. J., July 15, 1957.—On information of a special police officer of the Borough of Berwick, this county, defendant was charged with the operation of a motor vehicle in violation of section 1002(a), art. X, of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §501. That section provides:

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed,

not greater than nor less than is reasonable and proper, having due regard to the traffic surface, and width of the highway, and of any other restrictions or conditions then and there existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead."

Subsection (e) of the said section 1002, provides:

"(e) In every information charging violation of this section, reference shall be made to this section, and subsection alleged to have been violated, specifying the speed at which the defendant is alleged to have driven."

The information signed by the prosecutor reads as follows:

"Richard M. Lowery, of the Borough of Berwick, Pennsylvania, County of Columbia, being duly sworn according to law, deposes and says that at or about the hour of 12:10 o'clock a.m., on the 12th day of May, 1957, one Clarence Fish, residing at Park Place Village, Berwick, Pennsylvania, the driver of a certain motor vehicle bearing 1957 Pennsylvania Registration Plates Number 621DD, Operator's Plate Number 3319937; the defendant above named, unlawfully or feloniously, as the case may be, did operate a motor vehicle upon a public highway at a speed so as to endanger the life, limb, or property of any person, and at a speed greater than would permit him to bring the vehicle to a stop within the assured clear distance ahead.

"Contrary to the provisions of the Act of Assembly, as set forth in subsection (a), section 1002, article X of the act approved May 1, 1929, and amendments thereto, and against the Peace and Dignity of the Commonwealth of Pennsylvania. Complainant there-

fore prays, that a warrant may issue and defendant be arrested and held to answer this charge of too fast for conditions and further deponent saith not."

On May 24, 1957, defendant appeared before the justice of the peace, waived a hearing and gave bond, conditioned for his appearance in the next term of court, and the district attorney's office fixed a hearing de novo to be held Monday, July 8, 1957.

Before proceeding with the hearing, counsel for defendant presented a motion to the court requesting that the above quoted information be quashed for the following reasons:

"1. That said information fails to allege the proper facts of the violation in this case.

"2. That said information fails to allege the speed at which the defendant was traveling at the time of said violation."

The court took the motion under advisement and proceeded to hear the testimony of both the Commonwealth's witnesses and defendant, and it appears that the prosecutor, in company with a fellow special policeman, was parked in a police car at the west end of Berwick near Front Street observing the traffic moving thereon as the Veterans of Foreign Wars Club and West Side Park were both having a considerable number of patrons leave the establishments and causing considerable traffic on West Front Street.

At about 12:10 a.m., it was wet or raining slightly when they observed the car of defendant proceeding east on West Front Street between Arch and Market Streets.

This section of Front Street is posted as a 35 mile per hour speed zone and further east on Front Street it is posted as a 25 mile per hour speed zone.

The officers immediately began to follow defendant and they clocked him at the speed between 45 and 55 miles per hour.

They also testified that defendant passed through two caution lights without slowing down, but as he approached the First National Bank, he pulled to his right side of the road and stopped to use the night depository. The officers then called him over to the police car and informed him that he would be arrested for driving too fast for conditions.

The above quoted information is in our opinion very vague, general and indefinite, as the most that is contained therein is a partial quotation of the alleged act violated. It fails to proceed to state any facts or acts which made defendant's driving too fast for conditions.

We have many times advised persons serving the office of the justice of the peace to follow the formal words they so often use in an information with the two words, "in that", and then proceed to describe the improper conduct which defendant is alleged to have committeed so as to fully inform him of the charge against him.

These provisions of The Vehicle Code are penal in nature and therefore must be strictly construed. Defendant is entitled to the benefit of every doubt, this being a criminal proceeding and, therefore, the law enforcement officers, the justice of the peace and the Commonwealth have a heavy burden to not only upon trial prove the guilt of defendant beyond a reasonable doubt, but to fully inform defendant of the charge against him, and the failure on the part of the law enforcement officers to comply with this heavy burden gives defendant grounds to quash the proceedings.

It is true that the legislature by the manner in which they have written the regulations as to speed have made the same very technical and confused.

It is now generally held by all of the lower courts of Pennsylvania that where there is an alleged violation of a specific section of The Vehicle Code, the prosecution must be instituted under that section and not

364

under any general catchall section, and failure to comply with this requirement requires the court to dismiss the action. These cases are reviewed and taken up at length in the case of Commonwealth v. Frisco, 67 D. & C. 51.

In regard to whether or not it is necessary to allege in the information the speed that defendant is traveling, there is a conflict in the decisions of the lower courts of Pennsylvania. Some cases hold that subsection (e), above quoted, applies to all provisions of section 1002, while a few other cases hold that subsection (e) does not apply to prosecutions brought under subsection (a). This particular question is discussed at length in the case of Commonwealth v. Reese, 1 D. & C. 2d 741. On pages 742, 743, 744, 745, 746, it is stated:

"There is a conflict in the decisions of the lower courts of Pennsylvania on this question. Several lower courts have decided that the requirement of subsection (e) as to specification of defendant's speed does not apply to prosecutions under subsection (a) : Commonwealth v. Hazy, 66 D. & C. 451 (Montgomery County) ; Commonwealth v. Feyka, 62 D. & C. 353, 356 (Beaver County) ; Commonwealth v. Weber, 33 D. & C. 488 (Lancaster County). The basis for these decisions is that in situations covered by subsection (a) it would be almost impossible to fix the speed of a motor vehicle except by the general statement 'too fast for conditions', hence the effectiveness of The Vehicle Code would be impaired if a more accurate specification of speed were required, a result which is absurd, unreasonable and not intended by the legislature. Other lower courts have taken the opposite view and have decided that the words used by the legislature in subsection (e) are clear and free from ambiguity, and therefore cannot legally be interpreted to exclude subsection (a) from their operation without doing violence to the express mandate of the legislature: Com-

monwealth v. Fry, 65 D. & C. 551 (Franklin County) ; Commonwealth v. Stroh, 71 D. & C. 378 (Lycoming County). We agree with this view.

"When language of a statute is plain and unambiguous and conveys a clear meaning, there is no occasion for resorting to rules of statutory construction, and the statute must be given its plain and obvious meaning, and the court may not speculate as to the possible intention of the legislature. Construction of a statute is necessary only if the expressions used will bear two or more meanings. When the words of a law are clear and free from ambiguity the letter is not to be disregarded under the pretext of pursuing its spirit.

"Section 1002 of The Vehicle Code is penal in nature and therefore it must be strictly construed.

"Section 1002 of The Vehicle Code is captioned 'Restrictions as to Speed'. Subsection (a), requiring the driver of a vehicle to drive at a careful and prudent speed under existing conditions, creates a complete offense separate and distinct from every other offense defined in section 1002: Commonwealth v. Klick, 164 Pa. Superior Ct. 449, 452. Subsections (b) and (c) specify the maximum speeds varying from 10 to 70 miles per hour at which motor vehicles may be driven under certain conditions. Subsection (d) sets forth the manner in which the speed of motor vehicles may be timed and ascertained. Subsection (e) provides: 'In *every* information charging violation of *this section,* reference *shall* be made to this section and subsection alleged to have been violated, *specifying the speed at which the defendant is alleged to have driven.'* (Italics supplied.)

"In our opinion it is significant that the legislature, in express terms, made subsection (e) applicable to the whole of section 1002 and not to a portion thereof. The express words of the legislature may not be ignored where their meaning is plain and obvious. The

words, 'this section', contained in subsection (*e*), cannot possibly refer to any other section than section 1002. In these circumstances the court may not speculate as to the possible intention of the legislature.

"The requirement that speed be specified in the information is not absurd, impossible of execution or unreasonable. Obviously, to sustain a conviction under subsection (*a*), there must be competent evidence as to speed. No conviction could be properly sustained on testimony that defendant was driving too fast for conditions. Conclusions of this nature as to speed are not admissible: Warruna v. Dick, 261 Pa. 602; Tolomeo et al. v. Harmony, etc., et al., 349 Pa. 420.

"The necessity for competent evidence as to speed in prosecutions under subsection (*a*) is forcibly pointed out by Wingerd, P. J., in Commonwealth v. Fry, 65 D. & C. 551, 553, 555:

"'As a practical matter, with reference to subsection (*a*), how can a court decide whether a speed is greater than is reasonable and proper under the conditions, which must be described, unless the speed is shown, and how can a court say that a person was driving at a speed greater than would permit bringing the vehicle to a stop within the assured clear distance ahead unless the speed were shown, the clear distance ahead were shown and there was evidence within what distance a vehicle going at the speed at which the vehicle in question was traveling could be stopped. As the whole question involved is based on the speed, the speed must be shown and, as the speed must be shown, defendant has the right to know at what speed it is alleged he was traveling. . . . Because there may be cases in which the rule set by the legislature makes it difficult to allege the basis on which it is contended that defendant violated The Vehicle Code, or seems a hardship upon those having the burden to prove a de-

fendant's violation thereof, is to our mind no reason to hold that the express provision of The Vehicle Code does not apply. . . . Many of the cases where it would be practically impossible to allege the speed at which defendant was traveling when he was driving in a manner which was in disregard of the rights of others, or in a manner so as to endanger any person or property, can be prosecuted under section 1001(a), which is headed 'Reckless Driving'."

In the case of Commonwealth v. Ferbezar, 3 D. & C. 2d 754, it was likewise held that a prosecution under subsection (a) cannot be sustained where the only alleged violation is that of excessive speed.

It is to be noted that section 1002 was amended by the legislature by the Act of May 28, 1956, P. L. 1769, secs. 2, 3, and it is now permissible for a police officer who is operating a motor vehicle equipped with a speedometer which has been checked for accuracy 30 days prior to the alleged violation to clock the rate of speed of a motor vehicle for a distance of not less than one-fourth mile, both on the open road and within a business or resident district, but then the prosecution is instituted under subsection (b) according to the facts of the case.

The act of assembly passed which permitted prosecution for speed violators within a business or resident district only when two peace officers clocked the offender over a measured stretch of at least one-eighth of a mile in length provided an exclusive remedy and stated "under all conditions the rate of speed should be timed, etc". The new act as amended after reenacting the provision "is timed by two peace officers over a measured stretch" proceeds to state "or under any conditions the rate of speed may be timed, etc.", so that the unfortunate situation which was present in cases like Commonwealth v. Maurer, 26 Northumb. 179, has now been corrected, but we believe it is neces-

sary for the municipal police authorities to have their speedometers checked in accordance with the act and then to lay their information under subsection (*b*) of the act and not subsection (*a*).

In light of the foregoing principles, we are inclined to conclude that the motion to quash must be granted in this particular case and to this end, we make the following

### Order

And now, to wit, July 15, 1957, the motion of defendant to quash the information is sustained; the above captioned case is dismissed and the costs are placed upon the County of Columbia.